## HOOKS v. NASHVILLE BREEKO BLOCK & TILE CO.

### No. 131.

District Court, M. D. Tennessee, Nashville Division.

July 7, 1941.

C. Beverly Briley and W. Cornelius Breedlove, both of Nashville, Tenn., for plaintiff.

Bass, Berry & Sims, of Nashville, Tenn., for defendant.

DAVIES, District Judge.

This action having been tried by the court without a jury, the court hereby makes the following findings of fact and conclusions of law:

#### Findings of Fact.

The defendant is a corporation organized under the laws of Tennessee, and is engaged in the business of manufacturing building blocks out of cinders and cement. These cinder blocks are heavy, and of such a nature that it is impractical, from an economical standpoint, to sell and deliver the products at any great distance from the plant, due primarily to the high cost of transportation, high freight rates, and the further fact that similar plants are in operation in practically all of the large cities surrounding Nashville, Tennessee, where defendant's products are produced and sold, and small plants exist even in numerous small towns closely adjacent to Nashville, Tennessee. The building blocks produced by the defendant are of a standard variety, and defendant has at all times had and maintained a large stock of blocks of standard size upon its yards in Nashville, Tennessee.

Over a period of fifteen years, at least 98½ per cent. of the goods manufactured by the defendant have been sold in intrastate commerce, and 95 per cent. of the goods were sold locally in Nashville and Davidson County, Tennessee, where the defendant maintains its place of business.

Proof shows that the defendant delivered some building blocks to Morgantown, Kentucky, and perhaps to other small towns in Kentucky, but for the most part, these

deliveries were before the Fair Labor Standards Act of 1938, 29 U.S.C.A. § 201 et seq., went into effect, such, for example, the delivery to Morgantown, Kentucky, the proof showing that the last delivery was on October 17, 1938.

In December, 1939, the defendant shipped two carloads of blocks to McKissack & McKissack at Fort Valley, Georgia. The evidence showed that McKissack & McKissack were local architects and builders in Nashville, Tennessee, and that they were engaged in the construction of a certain school building at Fort Valley, Georgia, and intended to purchase building blocks from a concern which manufactured them at Atlanta, Georgia. However, when the time came to purchase these blocks, it developed that the Atlanta manufacturer had gone into bankruptcy, and in this emergency, McKissack was required to purchase the necessary building blocks from the defendant. The blocks were purchased out of stock that had been previously manufactured, and were of standard size, and the freight cost approximately equaled the cost of the blocks themselves. The blocks were not manufactured for McKissack & McKissack, nor was there any knowledge or expectation at the time of manufacture that these blocks would be shipped and delivered outside the State of Tennessee.

A few weeks after passage of the act, the defendant shipped two carloads of cinder brick to a purchaser at Birmingham, Alabama, in December, 1938, but the proof shows that the product was of the standard variety, and at the time of manufacture, the defendant had no reason to believe or expect that the cinder brick would be shipped in interstate commerce.

In approximately ten instances, over a period beginning December 26, 1938, and ending March 6, 1939, one L. D. Gorrell of Russellville, Kentucky, purchased building blocks at the defendant's plant in Nashville, and transported them to Russellville, Kentucky. It is clear from the proof that all of these purchases were made by Gorrell at Nashville, and were not manufactured to his order, but were simply purchases out of stock made on the yard. The blocks were delivered by the defendant to Gorrell at Nashville, and there is no proof to show that they were manufactured or produced with the intent and purpose of being shipped in interstate commerce. On the other hand, the proof shows that the defendant had no hope or expectation that such would be the result, and it appears from all the proof that the product was produced for the purpose of being sold in intrastate commerce on the local market.

The defendant did not advertise for business outside the State of Tennessee, and had no salesmen soliciting business outside the state, and except for the shipments to Fort Valley, Georgia, and Birmingham, Alabama, all goods produced by the defendant and passed in interstate commerce were purchased on the defendant's yard in Nashville, Tennessee, out of the stock of merchandise, and transported outside the state by the purchaser. The total amount of such purchases was relatively insignificant in comparison with the total volume of defendant's business.

The proof shows that the defendant made certain mold boxes for use in its plant at Nashville, Tennessee, these mold boxes being attachments on the machines on which building blocks were made. The defendant was the licensee of certain patents used in the manufacture of cinder blocks, the licensing corporation being the Breeko Corporation, whose control and ownership was different from that of the defendant corporation. The Breeko Corporation licensed other manufacturers engaged in business similar to that of the defendant. Under the proof, it appears that the defendant, purely as a matter of accommodation, delivered approximately six of these mold boxes to Breeko Corporation, charging the Breeko Corporation with the actual cost thereof, and the latter corporation in turn shipped these mold boxes to other licensee corporations at Baltimore, Maryland, and in North Carolina. The defendant is not engaged in the manufacture and sale of mold boxes, and the shipment of these attachments in interstate commerce was wholly incidental, and purely an accommodation out of which the defendant received no profit whatever. The mold boxes were not produced for shipment in interstate commerce, but were intended to be used locally on defendant's machines at Nashville, Tennessee.

### Conclusions of Law.

■ Defendant is not engaged in interstate commerce, and is not engaged in the production of goods for interstate commerce, and the plaintiffs, who were employees of the defendant, were not engaged in commerce or the production of goods for commerce.

■ Isolated transactions, such as the shipments to Fort Valley, Georgia, and to

Birmingham, Alabama, do not constitute doing business in interstate commerce.

Goods can be manufactured for the purpose of being sold in interstate commerce, without the manufacturer necessarily having to deliver the goods himself, and if such sales constituted a substantial part of the defendant's business, it could be said that there was some intent or hope on the part of the defendant that such business would continue, and that he would be producing goods for interstate commerce. However, considering the nature of the defendant's business, and the fact that such a small percentage of the goods produced by it passed by such means in interstate commerce, it can not be said that the defendant had any intention that its goods would move in interstate commerce, or that it was engaged in the production of goods for interstate commerce.

The defendant was not in the business of manufacturing mold boxes for the purpose of making Breeko Blocks, since same were made for use in its own plant, and the out-of-state transactions with reference to some of these mold boxes did not constitute engaging in interstate commerce, or producing goods for shipment in interstate commerce on the part of defendant.

In view of the above findings that the defendant is not engaged in the production of goods for interstate commerce, and is not engaged in interstate commerce, and that the plaintiffs were not engaged in interstate commerce, or in the production of goods for interstate commerce, judgment will be entered dismissing the complaint against the defendant, and assessing the costs of this cause against the plaintiffs.