**HILL et al. v. JONES et al.**

District Court, W. D. Kentucky,
Paducah Division.

April 5, 1945.

Prince, Cox and Acree, of Benton, Ky., and Fisher Neal, of Paris, Tenn., for plaintiff.

Eaton & Eaton and W. V. Eaton, all of Paducah, Ky., for defendants.

MILLER, District Judge.

The plaintiffs, Charles W. Hill, Willard Ryan, Erben Reeder and Sam Reeder, employees of the defendants, J. L. Jones and R. R. Jones, trading as T. A. Jones and Sons, brought this action to recover for unpaid wages, overtime compensation and liq-

570

uidated damages under the provisions of the Fair Labor Standards Act of 1938, 29 U.S.C.A. §§ 201–219. The defendants contend that the plaintiffs are not covered by the provisions of the Act.

The defendants, J. L. Jones and R. R. Jones, are residents and citizens of Paducah, McCracken County, Kentucky, and during the period of October 24, 1938 through September 30, 1940, were partners trading and doing business under the firm name of T. A. Jones and Sons. R. R. Jones ceased to be a member of the firm with the close of business on, September 30, 1940, and thereafter the defendant J. L. Jones continued to operate the business individually. The business was originally started by T. A. Jones, father of the two defendants, and upon his death in 1931 the two sons continued to carry it on. The firm engaged in the general business of meat packing which included the processing of cattle, hogs, calves, sheep and edible meats. By-products of the business were inedible grease or tallow and hides. The meats and edible products were sold locally, mostly in the area around Paducah and Mayfield, Kentucky. The firm did not engage in shipping or selling its edible products to customers outside the State of Kentucky. In some few instances sales of meat were made to purchasers who called at the plant in Paducah, Kentucky, who took delivery and paid for their purchases there, and who may have thereafter transported the products so purchased into adjoining states. While the evidence shows a possibility of such interstate commerce, it does not show it actually happened, and plaintiffs' contention that such sales were made in interstate commerce is rejected as not being sufficiently supported by the evidence.

The principal part of the defendants' business was the slaughtering of livestock to get the meat. In this process the animal was first slain, then bled, then dressed which included the removal of the hides and insides, and then the meat was placed in the cooler. The hides were thrown into a concrete vat where they were spread out, salted, and one placed on top of another. The vat would hold about 40,000 pounds of hides. The placing of the hides in the vat and salting them required from 30 to 45 minutes per day. It was not done every day. When it came time to remove the hides from the vats and market them a separate crew which did not include any of the plaintiffs handled that work. The trimmings, offal, bones and inedible parts of the animals were accumulated throughout the day and at the close of the day were thrown into a tank and later converted into tallow. The Company also produced some cracklings, which is a type of edible lard. Wet tonnage was the only by-product from the business which was not sold and it was hauled out into the country and dumped.

During the period under consideration the inedible tallow and hides were sold by the defendants to Williebald-Schaeffer of St. Louis, Missouri, and to H. M. Stittle and Company of Indianapolis, Indiana. Both of these purchasers would come to the plant at Paducah, Kentucky, and take delivery there of the products so purchased. Payment for the same was made by Williebald-Schaeffer in cash at the plant at the time of delivery, and by H. M. Stittle and Company by mailing of a check at a later date from Indianapolis, Indiana. Both the tallow and the hides were sold only about twice a year. In making such a sale of the tallow the time consumed was approximately two hours. Such sales of tallow constituted less than one percent of the total annual sales of the Company, and all sales of tallow and hides constituted from three to four percent of the total annual sales of the Company.

The plaintiff Charles W. Hill was one of the employees of the defendants on and after October 24, 1938. At that time he helped in processing hams, taking care of the brine room, curing of the meats, slaughtering hogs, making sausage and helping fill the tank. He helped slaughter hogs on about three days a week in the afternoons. He joined with other employees in filling the tank with inedible products as the last part of the day's work, which part of his work would usually consume about 20 minutes a day. When he worked in the sausage room he was acting foreman and his duties included the making of sausage, taking care of the books and taking inventory of the supply of sausage on hand. During the period of October 1938 to the Spring of 1942 when Hill discontinued being an employee he worked principally in the sausage department for approximately three years.

The plaintiff Erben Reeder worked as an employee for the defendants as a clean-up

man and in charge of rendering the lard when he was first employed. Later he was switched to the sausage room and also worked in the smokehouse. He worked in the brine room during the last three months of his employment. He also assisted every week at hog killing and at the end of the day of gathering up inedible material for the tank.

The plaintiff Willard Ryan was an employee of the defendants on October 24, 1938, and quit working for the company about July 7, 1942. In 1938 his work consisted in killing cattle, skinning them and taking care of the tankage and cooking off tallow. Later for a period of about 6 months he worked in the brine room taking care of the curing of meat and the boiling of bacon and ham. He also fired the boiler which cooked the sausage and made hot water for the whole plant. At the end of the day he also assisted in gathering inedible products and placing them in the tank which work required from 15 to 30 minutes a day.

The plaintiff Sam Reeder when first employed by the defendants started to work rendering lard. His brother Erben Reeder had been employed by the defendants some four or six months previously and had worked at rendering lard until Sam Reeder was employed and took over this work. He continued at this type of work about 14 months and then assisted in slaughtering cattle and took over the firing of the boiler. In slaughtering cattle he worked three or four days a week in the afternoons. At the end of the day he joined the other employees in gathering up scraps and inedible products and placing them in the tank, which part of his work consumed 20 or thirty minutes a day.

None of the plaintiffs participated in the salting or the curing of the hides or in the sale or delivery of them to the purchasers.

The hours of work for the plaintiffs and other employees were from 7:00 a. m. until 5 or 6 p. m., with an hour off for lunch from 11:00 a. m. to 12 Noon. The closing hour was not a definite time. In ordinary periods the work-day would average approximately 9½ hours. In rush periods it might last 2 hours or more longer. No record was kept by the Company of the exact number of hours each employee worked each day. They worked 6 days a week and were paid a flat weekly wage, regardless of the number of hours included in any particular work-week. In case of absence from work for a day or half a day, the weekly wage of that particular employee was divided by six to determine his daily compensation and the proper amount for either a whole day's absence or a half day's absence was deducted from the weekly wage when later paid. If the employee lost only an hour or two in a day no deduction was made. The defendants also paid to each employee at the end of the year an additional dollar per week for the number of weeks such employee had worked during the year. This was called a bonus but is found by the Court to be part of the wage of each of the plaintiffs herein. In addition to the work on the six week-days, the employees would take turns in feeding and watering the cattle on Sundays. This work would come to each employee about once every 6 or 8 weeks and would take approximately half an hour or less to perform. In addition to the work above referred to it was necessary to operate the icing machine on Sundays during July and August, and sometimes longer. This was done by one employee at a time, taking turns, and the work consumed approximately four hours in the morning. Five or six men rotated in this work. The plaintiffs Charles Hill and Willard Ryan participated in operating the icing machine, but neither of the plaintiffs Erben Reeder or Sam Reeder participated in this part of the work.

The amounts paid by the defendants to each of the plaintiffs and the number of days worked by each of the plaintiffs for the period involved in this action is as set out week by week for each plaintiff in the tabulation compiled by the defendant J. L. Jones and filed as a part of his answers to the interrogatories propounded by the plaintiffs to him in this action.

The plaintiffs seek recovery under the provisions of Sections 6 and 7 of the Fair Labor Standards Act, which deal with minimum wages and maximum hours for employees who are "engaged in commerce or in the production of goods for commerce." Sections 206 and 207, Title 29 U.S. C.A. The defendants contend that these employees were not engaged in commerce or in the production of goods for commerce, because (1) no sales were made by the defendants outside of the State of Kentucky; (2) such sales as later went into commerce constituted only a small portion

of their total business, and (3) these particular plaintiffs had no substantial participation in any transactions that might be considered as commerce.

▮▮ The fact that goods produced by the defendant were sold, delivered and paid for in the same state where they were produced, did not necessarily remove them from the classification of goods produced for interstate commerce. "Production for commerce" within the meaning of the Act includes production of goods which at the time of production the employer according to the normal course of his business intends or expects to move in interstate commerce immediately following the initial sale. United States v. Darby, 312 U.S. 100, 61 S.Ct. 451, 85 L.Ed. 609, 132 A.L.R. 1430; Chapman v. Home Ice Co., 6 Cir., 136 F.2d 353; Walling v. Peoples Packing Co., 10 Cir., 132 F.2d 236; Gordon v. Paducah Ice Mfg. Co., D.C. 41 F.Supp. 980, and cases cited on Page 985. See also: Kirschbaum v. Walling, 316 U.S. 517, 62 S.Ct. 1116, 86 L.Ed. 1638; Warren-Bradshaw Drilling Co. v. Hall, 317 U.S. 88, 63 S.Ct. 125, 87 L.Ed. 83.

▮ A manufacturer is engaged in commerce within the provisions of the Act, even though only a small portion of his business is interstate. Such of his employees as serve in that portion of the business are subject to the provisions of the Act. Chapman v. Home Ice Co., 6 Cir., 136 F.2d 353; Walling v. Peoples Packing Co., 10 Cir., 132 F.2d 236; Davis v. Goodman Lumber Co., 4 Cir., 133 F.2d 52; Stucker v. Roselle, D.C.W.D.Ky., 37 F.Supp. 864, and cases cited on Page 866.

▮ The application of the Act depends upon the character of the employee's activities. Some employees may be engaged in commerce while others doing different work for the same employer are not. Kirschbaum Co. v. Walling, 316 U.S. 517, 524, 62 S.Ct. 1116, 86 L.Ed. 1638; Walling v. Jacksonville Paper Co., 317 U.S. 564, 571, 63 S.Ct. 332, 87 L.Ed. 460; Jax Beer Co. v. Redfern, 5 Cir., 124 F.2d 172.

▮ Unless a substantial portion of an employee's activities is in interstate commerce he does not come within the protection of the Act. Where some inconsequential incident of interstate commerce happens to result from the general conduct of a fundamentally intrastate business, or where an interstate sale is a casual or occasional one, the rule of "de minimis non" is applicable, and the Act does not apply. Walling v. Jacksonville Paper Co., 317 U.S. 564, 572, 63 S.Ct. 332, 87 L.Ed. 460; Walling v. Silver Bros. Co., 1 Cir., 136 F.2d 168, 169; Spier v. Gulf Coast Beverages, D.C.S.D.Fla., 50 F.Supp. 653; Hooks v. Nashville Breeko Block & Tile Co., D.C.M.D.Tenn., 39 F.Supp. 369; Goldberg v. Worman, D.C.S.D.Fla., 37 F.Supp. 778; Prescription House v. Anderson, D.C. S.D.Texas, 42 F.Supp. 874. See also: Schmidt v. People's Telephone Union, 8 Cir., 138 F.2d 13, 15; Ling v. Currier Lumber Co., D.C.E.D.Mich. 50 F.Supp. 204, 207.

▮ The plaintiffs did not participate in the work of curing the hides or in the subsequent sale or delivery of them to the purchasers. Their only connection with this phase of the business was incidental to the slaughtering and dressing of the animals in which it was necessary to remove the hides. The real work of preparing the hides for commerce was performed by other employees. Accordingly, in this phase of the defendants' business these particular employees were not engaged in commerce or in the production of goods for commerce, even though the defendants themselves may have been so engaged. The remaining portion of the defendants' products which went into commerce was the tallow, in the production of which the plaintiffs did participate to a very small extent by their work in collecting the inedible products and throwing them into the tank at the end of the day's work. But the total sales of tallow amounted to less than one percent of the total volume of all sales and such sales occurred only about twice a year. The plaintiffs gave only a small fraction of their time to this work. The character of the work itself and the plaintiffs' participation in it constituted such a minor portion of the defendants' business and the employment of these plaintiffs therein as to place the matter within the rule of "de minimis non" to which transactions the provisions of the Fair Labor Standards Act are properly not applicable.

The petition of the plaintiffs is dismissed at their cost.