**FOLMER GRAFLEX CORPORATION v.
GRAPHIC PHOTO SERVICE et al.**

No. 972 Civ. A.

District Court, D. Massachusetts.

March 30, 1942.

New Trial Granted June 19, 1942.

See, also, 35 F.Supp. 963; 41 F.Supp. 319.

Irving U. Townsend, I. U. Townsend, Jr., and Emery, Booth, Townsend, Miller & Weidner, all of Boston, Mass., for plaintiff.

Worth Rowley, of Boston, Mass., for defendants.

FORD, District Judge.

The plaintiff brings this action for trademark infringement and unfair competition. Injunctive relief only is sought—an accounting for damages and profits being waived—to restrain the defendants from violating the rights of the plaintiff in the trade-mark "Graphic" registered in the United States Patent Office on December 4, 1906 by Folmer & Schwing Company, of Rochester, New York, a predecessor of the plaintiff, under the provisions of the Federal Trade-mark Act of February 20, 1905, c. 592, Sections 1–30, 33 Stat. 724-731, 15 U.S.C.A. § 81 et seq., hereinafter referred to as the 1905 Act.

The defendants deny both the validity of the trade-mark and any infringement thereof.

The plaintiff is a Delaware corporation having its place of business at Rochester, New York, and the defendants are individuals engaged in business since March 15, 1939, at Gardner, Massachusetts, where they conduct a camera shop and sell photographic merchandise.

It was shown at the trial that the plaintiff, as a separate corporation, is, and has been, since 1926, engaged in the manufacture and sale of cameras, accessories therefor, apparatus for making contact prints with enlargements, and many and other allied products of a photographic nature. One extensive line of the plaintiff's products is manufactured and marketed under the name of "Graflex". In addition to this line, the plaintiff and its predecessors, the Folmer & Schwing Company and the Eastman Kodak Company, have continuously, since July, 1896, manufactured and marketed a list of products bearing the name "Graphic". The word "Graphic" is used on most of its products and appears on practically all of them in combination with other terms. It manufactures and sells "Speed Graphic" cameras, the "No. O Graphic" camera, the "R B Cycle Graphic", "Graphic Rapid Rectilinear" camera, "Stereoscopic Graph-

ic", etc., and accessories such as "Graphic Press Plate Holders", "Graphic Press Film Holders", "Graphic Sight Finders", "Graphic Lens Shades", etc. Since 1918, or earlier, only "Speed Graphic" cameras have been sold in Massachusetts within a price range of $120–$200. All of the plaintiff's cameras are sold at wholesale to dealers and its one jobber, Eastman Kodak Company. It manufactures no photographic film, printing paper, or chemicals.

As stated above, on December 14, 1906, the Folmer & Schwing Company, plaintiff's predecessor, registered "Graphic" (No. 57,-887) in the Patent Office as a trade-mark for photographic cameras. This registration was renewed December 4, 1926. It stated in its application that "Graphic" had been used as a trade-mark continuously in its business for almost ten years and "* * * The class of merchandise to which the trade-mark is appropriated is Class 63, Measuring and scientific apparatus, appliances and instruments, and the particular description of goods comprised in said class upon which said trade-mark is used is photographic cameras".

The plaintiff's products are distributed throughout the United States, including Massachusetts, by something like 2,800 authorized dealers, 4% of whom are in Massachusetts. Eighty of these dealers are within a fifty-mile radius of Gardner, Massachusetts, where the defendants' business is located; fifteen or sixteen are within a twenty-five mile radius; there is one in Gardner and three in cities within a radius of twelve or sixteen miles of Gardner. These dealers have sold principally the products of the plaintiff, the "Speed Graphic" camera among them, and a great many accessory items, some of which have been mentioned above. In addition to these regular dealers, the Eastman Kodak Company has jobbed the plaintiff's line since the plaintiff became a separate and distinct corporation in 1926.

Extensive national advertising has built up for the plaintiff a very substantial good will and a high reputation for its products. "Graflex", a well-known trade-mark of the plaintiff, and "Graphic" products are known in the camera trade for their precision, quality, and satisfactory craftsmanship.

The defendants established their business in Gardner, Massachusetts, in March, 1939, and since that time have carried on a comparatively small business. They were then and are now small dealers for products of the Agfa Ansco Corporation, Defender Photo Supply Company, and American Photographic Supply Company. The City of Gardner has about 20,000 inhabitants. In 1939, total sales of cameras by the defendants amounted to $454 out of a gross for sales and service of $2,663. Sales outside of cameras consisted of film, chemicals, photo papers, and services, such as, photo-finishing, with some newspaper and commercial work. In the year 1939, one camera, a "Rolliflex", was sold by the defendants for $115 out of which they made a profit of $5. This sale was reasonably in the range of prices for which the plaintiff's dealers sold its cameras. During the same year the defendants sold one "Speed Graphic" camera, a product of the plaintiff. The average price of the other cameras sold by the defendants in 1939 and 1940 up to the date of the present complaint was in a range from $3 to $5, with a few at $5 to $7, and one for $7.95. Most of these were the "Agfa". In 1940, the total sales of cameras amounted to $107.09 out of a total business of $4,532.31. The other items, outside of cameras, that made up this gross income were news and commercial photography, photo-finishing, sale of film, chemicals and papers. No camera in the price range of the plaintiff's products was sold during that year. It can easily be seen that the defendants' business in cameras was small.

The defendants, on August 10, 1939, filed a business certificate with the city clerk of Gardner giving notice that they were doing business under the firm name and style of "Graphic Photo Service". At a previous place of business in Gardner and at their present location, the defendants maintained on their windows, one small three-inch green Neon sign bearing the name "Graphic Photo Service", the three words placed over one another. Another sign carried the same wording with "Graphic" above and "Photo Service" below. Other than on these signs, letterheads, stationery, and labels, no other evidence was introduced showing the defendants' use of "Graphic Photo Service".

On March 8, 1940, the defendants, notified by letter to discontinue the use of the word "Graphic", refused to do so.

The first issue involved is whether the plaintiff is the owner of "Graphic" as a technical of common-law trade-mark, properly registerable as such under the pro-

visions of the 1905 Act. The plaintiff says the word "Graphic" is a common-law trademark in that it has been used to indicate origin and ownership; that it is fanciful, arbitrary, and meaningless as applied to cameras; that it was not even suggestive with respect to cameras until it was registered. The defendants claim it is descriptive. It needs no long citation of authorities to establish the proposition that a mark which is descriptive is not a good trade-mark at common law. Warner & Co. v. Eli Lilly & Co., 265 U.S. 526, 44 S.Ct. 615, 68 L.Ed. 1161; Amoskeag Manufacturing Co. v. D. Trainer & Sons et al., 101 U.S. 51, 25 L.Ed. 993. The difficulty in this type of case is to draw the line between different classes of words. Many of the cases are close. This case is no· exception.

A trade-mark is adopted to designate and distinguish the particular goods owned and sold by a merchant or manufacturer, or, in other words, to indicate origin and ownership. Elgin National Watch Co. v. Illinois Watch Case Co., 179 U.S. 665, 21 S.Ct. 270, 45 L.Ed. 365. A descriptive word used in its primary sense does not do this and a manufacturer has no right to the exclusive use of any such word which has no relation to the origin and ownership of goods. Delaware & Hudson Canal Co. v. Clark, 13 Wall. 311, 20 L.Ed. 581. A word descriptive of the goods, or some feature or function of them, is not available as a trade-mark. Nims, 3d Ed., Unfair Competition and Trade-Marks, c. XIV, Section 201. "A designation cannot be a trade-mark for goods if it is likely to be regarded by prospective purchasers as a common name or generic name for such goods or as descriptive of them or of their ingredients, quality, properties, functions or uses". Restatement, Torts, Section 721; Warner & Co. v. E. Lilly & Co., supra.

The law in Massachusetts, which is the law applicable to the substantive rights of the plaintiff in its claimed trade-mark (Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487), is the same as disclosed in the federal cases cited above. See C. A. Briggs Co. v. National Wafer Co., 215 Mass. 100, 102 N.E. 87, Ann.Cas.1914C, 926, and the leading case of Gilman v. Hunnewell, 122 Mass. 139, 148. For this reason there is no need to distinguish between Massachusetts and Federal law.

The fact that "Graphic" was registered under the 1905 Act confers on the plaintiff no new substantive rights with respect to it and although registration under the Act is prima facie evidence of the validity, it is not conclusive.

Is "Graphic" as applied to cameras distinctive or descriptive? I think the latter. It was and is, as stated in the application, used on photographic cameras, instruments, or devices that write (graphic) vividly images or pictures on sensitized papers. This seems to describe the use to which the camera is put. Taking the meaning that an ordinary camera purchaser would apply to "Graphic", i.e., well delineated, clearly written, or drawn (Cf. Webster's New International Dictionary, 2d Edition), it certainly describes the product of the camera, i.e., the picture, image, or photograph.· And it may be said in this sense to characterize the camera's function, i.e., to take pictures vividly. I cannot get myself to conclude that "Graphic" as applied to cameras has no basis in "rhyme or reason" or, in other words, is purely fanciful. The word "Graphic" as applied to a camera is not meaningless and it is difficult to believe the original registrant regarded it so.

Inasmuch as each case of this type is bottomed on its own facts, it will not be particularly helpful to cite and attempt to distinguish a long list of cases which would tend to support and refute the above conclusion. Two cases may be noted where alleged trade-marks described the product or the effect of the use of the device or instrument. In No-D-Ka Dentifrice Co. v. S. S. Kresge Co., D.C., 24 F.2d 726, 728, this circuit decided that "No-D-Ka" as applied to tooth paste clearly described the effect which comes from the use of the tooth paste and "this is but a negative way of stating that the properties of the paste will preserve the teeth". So, in the present case, "graphic" states that the effect of the plaintiff's cameras is graphic pictures. In Re Pitney-Bowes Postage Meter Co., 56 App.D.C. 19, 6 F.2d 717, 718, the court held that "metered mail machine" was descriptive of a machine by which mail was metered. In truth, the term was descriptive of a product of the machine.

The plaintiff argues that considerable weight should be given the registration by the Patent Office. In other words, it says the registration carries a presumption of validity. Nims, op.cit., supra, c. XVI, Sec-

tion 240, p. 663; Planten v. Gedney, D.C., 221 F. 281. Admitting this, the presumption is not conclusive. Keystone Macaroni Mfg. Co. v. V. Arena & Sons, Inc., D.C., 27 F.Supp. 290, 292. Parenthetically, it may be noted that in its application for registration the plaintiff stated "graphic" had been "continuously used in the business of the corporation since July, 1896". The application is dated August 1, 1906. I have no justification for concluding that the Patent Office regarded the registration was applied for under the "ten-year proviso" clause of the 1905 Act, Section 5(b), 15 U.S.C.A. § 85(b), which allowed descriptive words to be registered, and mistakenly figured the ten-year user from the date of the application, August 1, 1906, rather than from February 20, 1905, which was required by the Act, Section 5(b). These dates certainly catch the eye in the view taken here as possibly of some significance.

It is my conclusion that "Graphic" is a descriptive word and not a technical trade-mark; that it was not, under the circumstances, properly registerable under the 1905 Act, and the remedies and advantages afforded a registrant by this Act are not available to the plaintiff. Whatever rights the plaintiff has must be found in the common law.

The conclusion that the 1905 Act does not apply makes it unnecessary to consider at length the question as to whether the defendants " * * * shall have used, such reproduction, * * * in commerce among the several States * * *". Section 16 of the 1905 Act, 15 U.S.C.A. § 96. It is very doubtful that these defendants could be found using any copies or colorable imitations of "Graphic" in interstate commerce. They sold no goods or merchandise in interstate commerce. A few of their letterheads and a label found their way across state lines in some correspondence of the defendants, but it is doubtful that it could be determined they were engaged in interstate commerce to any such extent as would make applicable Section 16 of the 1905 Act.

The plaintiff, to sustain its right to relief at common law, argues that even if it is not a common-law trade-mark, the term "Graphic" by the year 1939, when the defendants began using the firm name of "Graphic Photo Service", had acquired a secondary meaning and that their rights at common law have been infringed by the unfair trade practices of the defendants. The necessary jurisdictional requirements as to diversity and amount seem to be present and we shall now inquire into this aspect.

We shall understand better how to resolve this question if we first look at the applicable law.

It is the law of Massachusetts that where a descriptive epithet has a secondary meaning the use of the word cannot be absolutely prohibited but it may be restrained unless accompanied by sufficient explanation or precautions to prevent confusion with the goods of the original manufacturer or vendor. American Waltham Watch Co. v. United States Watch Co., 173 Mass. 85, 53 N.E. 141, 43 L.R.A. 826, 73 Am.St.Rep. 263; Cohen v. Nagle et al., 190 Mass. 4, 76 N.E. 276, 2 L.R.A.,N.S., 964, 5 Ann.Cas. 553; C. A. Briggs Co. v. National Wafer Co., supra. Where a secondary meaning for a word or sign has been acquired in a business, it is incumbent on one coming into the same business later, if he uses the word, to distinguish his own wares from those of the manufacturer earlier in the field. American Waltham Watch Co. v. United States Watch Co., supra, 173 Mass. page 87, 53 N.E. 141, 43 L.R.A. 826, 73 Am. St.Rep. 263; Nims, op.cit., c. IV, Sec. 37, p. 107. He must take reasonable precautions to prevent the name from deceitfully diverting the original manufacturer's customers.

If the word "Graphic" as used by the plaintiff has retained its primary or common meaning, there may be an absence of unfair competition if all efforts to mislead the public are avoided. Cohen v. Nagle et al., supra, 190 Mass. page 8, 76 N.E. 276, 2 L.R.A.,N.S., 964, 5 Ann.Cas. 553. The law applicable in the event a later manufacturer uses a word that has retained its primary sense is stated in terms in the case of C. A. Briggs Co. v. National Wafer Co., supra, 215 Mass. page 104, 102 N.E. page 89, Ann.Cas.1914C, 926, where the court said: "and its use even in its primary meaning will be so limited as to prevent the working of a probable deception by passing off the goods of one maker as those of another".

With these principles of law clearly in mind, let us now determine whether "Graphic" had acquired a secondary meaning. This involves a question of fact and the burden is upon the plaintiff to prove it.

It is true that the plaintiff has been, for more than forty years before this suit, distributing advertising for the purpose of acquainting the purchasing public with its goods. About 50% of the advertising of the plaintiff "plugged" the word "Graphic" and the other half was devoted to its trade-mark "Graflex". "Graphic" cameras were, without question, well known to dealers for their excellent workmanship and quality, but the real question involved is what did the purchasing public know about "Graphic" cameras, supplies, and accessories. What the plaintiff must show in this connection is "that the primary significance of the term in the minds of the consuming public is not the product but the producer". Kellogg Co. v. National Biscuit Co., 305 U.S. 111, 119, 59 S.Ct. 109, 113, 83 L.Ed. 73. It must show that the goods in connection with which the trade-name is used are the goods manufactured by it. Armstrong Paint & Varnish Works v. Nu-Enamel Corp. et al., 305 U.S. 315, 335, 59 S.Ct. 191, 83 L.Ed. 195. As Nims, op. cit., supra, c. VIII, p. 296, states, quoting Cutler on "Passing Off", p. 48, "Universality of recognition, therefore, is not required. What is required is that a substantial section of the purchasing public should be proved to identify the trade name of the plaintiff's goods, and that this should be true of the district in which the defendants' trade is done".

To prove that a substantial section of the purchasing public has associated "Graphic" cameras with it, the plaintiff introduced, in addition to its advertising efforts, five witnesses. The first was a vice-president of the plaintiff in charge of sales and advertising. The second, a member of the staff of the American Photographic Publishing Company, an amateur photographer who was presented as an expert, presumably with the knowledge of the mind of the purchasing public with respect to cameras, testified that a "Graphic" camera to him, individually, meant a camera manufactured by the plaintiff. This court refused to allow him to testify as an expert as to the state of mind of the purchasing public because that was a question of fact for the court to decide and not a subject of expert testimony. It also appeared that the publication this man represented carried advertising of the plaintiff. He could not, any more than the other witnesses, be said to be a disinterested witness. One small dealer testified that "Graphic"

meant the plaintiff. The next witness was an engineer at times employed by the plaintiff as a consultant; and the last witness was an office associate of plaintiff's counsel. Of course, as was expected, the vice-president of the plaintiff company, the engineer and the associate of plaintiff's counsel, testified that the term "Graphic" camera meant the plaintiff, or its predecessors. This evidence did not impress me on the issue involved. No witness representing the purchasing public was presented. The situation was left very much weaker for the plaintiff than it was in the case of Steem-Electric Corp. v. Herzfeld-Phillipson Co. et al. 7 Cir., 118 F.2d 122, 124, 125. From the evidence adduced here by the plaintiff, the best it has done is to show that "Graphic" as applied to cameras is associated with the product and not the producer. From the insufficient evidence presented, it would be difficult to determine that a substantial section of the purchasing public heard of the plaintiff in connection with "Graphic" cameras. It is my conclusion that if the word "Graphic" has really acquired a secondary meaning, the plaintiff has failed to sustain the burden of proving that fact in this case. Consequently, there could not be any exclusive appropriation of the word by the plaintiff in the sale of its cameras and supplies so that the defendants were compelled, to escape being enjoined from its mere use in their own trade-name, to take precautions to distinguish their business from the plaintiff's.

The question now remains as to whether the defendants were guilty of unfair competition in any other respect. Applying the Massachusetts law quoted above with respect to unfair competition in the use of words of primary or original meaning, I conclude they were not. The defendants did not deliberately "palm off" their goods as the goods of the plaintiff. No fraud was practiced upon the purchasing public by the mere use of the word by the defendants, nor was there any direct evidence or facts from which it could be inferred that the public was misled in any way by the defendants in the use of the word "graphic". Cf. New England Awl & Needle Co. v. Marlborough Awl & Needle Co., 168 Mass. 154, 156, 46 N.E. 386, 60 Am. St.Rep. 377. In fact the evidence showed that the defendants, except in two instances, did not deal in cameras in the price range of those of the plaintiff. There was no passing off. The defendants in fact

were hardly even competitors of the plaintiff.

Judgment will be entered for the defendants, with costs.