### Cain's Lobster House, Inc. *vs.* Merle V. Cain.

Norfolk.    November 12, 1942. — December 2, 1942.

Present: Field, C.J., Donahue, Qua, Cox, & Ronan, JJ.

*Unlawful Interference. Name. Contract*, Parties, For benefit of third person.

A retail business in sea foods carried on by the plaintiff in a store in conjunction with a restaurant under the trade name "Cain's," which had acquired a secondary meaning to the public as indicating such business, was unlawfully interfered with by one of the name of Cain who subsequently established another retail store for the sale of the same foods in close proximity to the plaintiff's establishment, using on his store a sign containing that name, with the result that there was confusion of the two businesses among the public trading with the plaintiff; and the plaintiff was entitled to have Cain enjoined from so conducting his business as to cause such confusion.

An agreement by a stockholder of a corporation with one who purchased all its capital stock, that he would not engage in a business competing with that of the corporation, could not be enforced by it.

Bill in equity, filed in the Superior Court on April 9, 1941.

The defendant appealed from a final decree entered by order of *Baker*, J. In this court the case was submitted on briefs.

*R. F. Barrett & W. J. Holbrook*, for the defendant.

*J. H. Brennan*, for the plaintiff.

Ronan, J. The plaintiff, since its incorporation in 1930, has been engaged each year during the regular seasons, which began in the late spring and continued until the late fall, in conducting a restaurant upon certain premises located in Weymouth, where lobster, crab meat and other sea foods were the principal articles served to the public. It has also maintained a retail store for the sale of such articles. It has for years sold alcoholic beverages in accordance with a license granted to it. The defendant, a lobsterman, whose home was located ten or fifteen feet away from the corporation's premises, had been for many years associated with

the plaintiff.   Early in 1940 a mortgage on the real estate, which was occupied by the corporation and stood in the name of the defendant's mother, was foreclosed by a bank. One Wells desired to purchase the business of the corporation and to secure the license for the sale of liquor which the licensing authority was willing to issue to the plaintiff. In order to secure a renewal of the license he deemed it expedient to continue the plaintiff corporation.   He purchased the real estate from the bank and acquired all the outstanding stock of the corporation including that held by the defendant.   The latter's mother gave a discharge of a chattel mortgage which she held on the property of the corporation.   Wells agreed to pay the indebtedness of the plaintiff up to a certain amount.   The defendant agreed that he would not engage in the business of selling lobster and crab meat at retail.   The plaintiff has expended several thousand dollars in improving its premises and has done a large business.   In June, 1940, the defendant fitted up the front of his house as a store for the retail sale of lobster and crab meat, and sandwiches made therefrom, and has since kept said store open during the regular seasons for such places.   The defendant does not conduct a restaurant and articles he sells are not eaten on the premises.   In connection with said store he has maintained an illuminated sign reading "M. V. Cain, Lobster and Crabmeat," "Sandwiches," "Native Crabmeat."   The judge found that the defendant's sign and the proximity of his place of business to that of the plaintiff cause confusion to the public desiring to buy such food stuffs and that his customers have frequently asked him if he was conducting both places; that the plaintiff has for years maintained on the front of its building a large electrically illuminated sign containing the word "Cain's"; and that the plaintiff has become known to the public as "Cain's."   The defendant has appealed from a final decree in which it is recited that the names "Cain's Lobster House, Inc." and "Cain's" have acquired a secondary meaning in a certain territory, therein described, as indicating the business conducted by the plaintiff, and which enjoins the defendant from using

the name "Cain" in any manner calculated to mislead or deceive the public "in the business of selling sea food" and restraining him from carrying on, a retail store for the sale of food, sea food, lobsters or crab meat in the town of Weymouth.

The defendant has been engaged for many years as a fisherman, having the necessary equipment and a wharf located in the rear of his home. His catches in the main consisted of lobsters and crabs and these he has sold either at wholesale or at retail to the public. He had a right to pursue that occupation and to conduct the business in his own name, *Gilman* v. *Hunnewell*, 122 Mass. 139; *Russia Cement Co.* v. *LePage*, 147 Mass. 206; *Burns* v. *William J. Burns International Detective Agency, Inc.* 235 Mass. 553, provided that the methods employed, including the manner in which his name was used, did not result in actual or probable deception of the public by inducing or reasonably tending to induce a belief that in dealing with him they were dealing with the plaintiff. In answer to a contention that the court will not interfere with the use of a man's name when the only confusion results from the similarity of his name to that of one with whom he has set up a competing business, it was said by Holmes, J., in *L. E. Waterman Co.* v. *Modern Pen Co.* 235 U. S. 88, 94, that "whatever generality of expression there may have been in the earlier cases, it is now established that when the use of his own name upon his goods by a later·competitor will and does lead the public to understand that those goods are the product of a concern already established and well known under that name, and when the profit of the confusion is known to and, if that be material, is intended by the later man, the law will require him to take reasonable precautions to prevent the mistake. . . . There is no distinction between corporations and natural persons in the principle, which is to prevent a fraud." If the natural and probable consequences of the use of his name by a newcomer have caused confusion to the public in differentiating his goods or place of business from the goods or location of an old established enterprise doing business under a similar name, then the newcomer has been

required to take such steps as may be necessary to eliminate such confusion. *Herring-Hall-Marvin Safe Co.* v. *Hall's Safe Co.* 208 U. S. 554. *Thaddeus Davids Co.* v. *Davids Manuf. Co.* 233 U. S. 461. *Andrew Jergens Co.* v. *Bonded Products Corp.* 13 Fed. (2d) 417. *Holland Furnace Co.* v. *New Holland Machine Co.* 24 Fed. (2d) 751. *Horlick's Malted Milk Corp.* v. *Horluck's, Inc.* 59 Fed. (2d) 13. *Gleaves* v. *W. B. Fishburn Co.* 82 Fed. (2d) 627. *John B. Stetson Co.* v. *Stephen L. Stetson Co. Ltd.* 85 Fed. (2d) 586. *S. C. Johnson & Son, Inc.* v. *Johnson,* 116 Fed. (2d) 427.

Here there is more involved than the mere use of his name by the defendant in the conduct of his business. It has been found that the defendant's sign and the proximity of his place of business to that of the plaintiff have caused confusion to those of the public who purchase goods of the kind offered for sale by the parties. The name "Cain's" had acquired a secondary meaning as indicating the plaintiff's place of business and it was entitled to have the defendant conduct his business in such a manner that it would not be confused with its business. Upon the facts found the defendant has wrongfully interfered with the plaintiff's retail trade. *Loew's Boston Theatres Co.* v. *Lowe,* 248 Mass. 456. *General Fruit Stores, Inc.* v. *Markarian,* 300 Mass. 90. *Cardinal* v. *Taylor,* 302 Mass. 220. *Jackman* v. *Calvert-Distillers Corp. of Massachusetts,* 306 Mass. 423. *Blair's Foodland Inc.* v. *Shuman's Foodland, Inc.* 311 Mass. 172.

The decree, however, permanently enjoined the defendant from conducting a retail store for the sale of food, sea food, lobsters or crab meat in the town of Weymouth. The plaintiff was not, in its own right, entitled to be free from any competition by the defendant. It could only complain, as we have already said, if it had been harmed by the actual or probable deception of the public by the defendant. *Libby, McNeill & Libby* v. *Libby,* 241 Mass. 239. *John L. Whiting-J. J. Adams Co.* v. *Adams-White Brush Co.* 260 Mass. 137. *Tent, Inc.* v. *Burnham,* 269 Mass. 211. *Highland Dye Works, Inc.* v. *Anteblian,* 270 Mass. 209. *Schnare* v. *Evans,* 301 Mass. 343.

The defendant agreed that he would not set up a business

that would compete with the plaintiff and that agreement has been properly found to have been a part of the transaction by which Wells purchased all the capital stock of the plaintiff. But this agreement was with Wells and not with the plaintiff. It was for the benefit of the corporation, but the latter furnished no consideration for the defendant's promise and it was not a party to the agreement between Wells and the defendant. The entire consideration moved from Wells. He is the only party, so far as appears from this record, that can enforce it. It is the general rule in this Commonwealth that no action can be maintained by a beneficiary who is not a party to the contract. *Dahlstrom Metallic Door Co.* v. *Evatt Construction Co.* 256 Mass. 404. *Pike* v. *Anglo-South American Trust Co.* 267 Mass. 130. *Central Supply Co.* v. *United States Fidelity & Guaranty Co.* 273 Mass. 139. *Exchange Realty Co.* v. *Bines,* 302 Mass. 93. *First National Bank of Boston* v. *Mathey,* 308 Mass. 108.

The final decree is reversed and a new decree is to be entered enjoining the defendant from conducting the business of selling at retail lobsters, crab meat, and lobster and crab meat sandwiches, in a manner that it is reasonably probable will result in inducing purchasers using ordinary care to trade with him in the belief that the business is conducted by the plaintiff, the details of the decree to be settled in the Superior Court. The counterclaim filed by the defendant is unsupported by any findings by the judge and must be dismissed.

*Ordered accordingly.*