## R. P. HAZZARD CO. v. EMERSON'S SHOES, Inc., et al.
### Civ. A. No. 7230.

United States District Court
D. Massachusetts.
Feb. 2, 1950.

Lee M. Friedman, Friedman, Atherton, King & Turner, Boston, Mass., for plaintiff.

Bailen, Snyder & Vernaglia, Herman Snyder, Boston, Mass., for Arlington Shoe Corporation and McElroy-Kerstein, Inc.

McCARTHY, District Judge.

This is an action for trade-mark infringement and unfair competition. The plaintiff has waived an accounting for damages and profits and seeks only to restrain the defendants from violating its rights in certain trade-marks containing the words "The Emerson Shoe" registered in the United States Patent Office on July 28, 1914 (No. 98649) and May 4, 1920 (Nos. 130711, 130712, and 130713) by the Emerson Shoe Company. All of these marks have been renewed. These trade-marks were assigned and transferred to another corporation, the Emerson Shoe Manufacturing Company, which in turn assigned and transferred them to the plaintiff on March 25, 1931, and have at all times since been owned by the plaintiff.[1]

The plaintiff is a corporation organized under the laws of Maine, with its usual place of business in Augusta, Maine, but since 1933 has not been registered as doing business in Massachusetts.

The defendant Emerson Shoes, Inc., is a Massachusetts corporation having its principal place of business since July 15, 1945, in Boston, Massachusetts. This corporation conducts a retail shoe store at 169 Harvard Avenue, Allston, Massachusetts, and at 305–A Harvard St., Brookline, Massachusetts.

The defendant McElroy-Kerstein, Inc., is a Massachusetts corporation, organized in 1940, which corporation at the present time conducts a retail shoe store in Waltham, Massachusetts. Its stock is wholly owned by the defendant, Emerson's Shoes, Inc.

The defendant, The Arlington Shoe Corporation, is also a Massachusetts corporation, organized on May 27, 1946, and at the present time conducts a retail shoe store in Arlington, Massachusetts. Fifty per cent of the capital stock is owned by Emerson's Shoes, Inc., and the remainder by one Harold A. McElroy.

The amount in controversy exceeds $3,000.

The plaintiff manufactures and sells men's shoes throughout the United States and has built up a large business. "The Emerson Shoe" constitutes part of plaintiff's output.[2] Since approximately the year 1937, the plaintiff has ceased supplying retailers directly with shoes marked "The Emerson Shoe" but rather has sold its production of shoes stamped "The Emerson Shoe" in this area to two distributors and more recently it has confined its sales to one distributor. It does not manufacture shoes marked "The Emerson Shoe" except on a specific order from the distributor and makes up no stock to be kept for sale. It

1. The Emerson Shoe Company was dissolved by decree of the Supreme Judicial Court of Massachusetts, Equity No. 43871, in 1926. The Emerson Shoe Manufacturing Company was likewise dissolved in 1931, Equity No. 54865.

There was also a Massachusetts corporation known as The Emerson Shoe Stores Company. In 1924 this corporation changed its name to the Nosreme—a reverse spelling of "Emerson"—Shoe Stores; in 1926 a receiver was appointed upon its petition for dissolution and thereafter was dissolved by decree of the Supreme Judicial Court in Equity No. 43872.

A New York corporation, The Emerson Shoe Stores Corporation, did business at Rockland, Massachusetts, and 68 Summer St., Boston, Massachusetts. In February, 1931, the leases and fixtures of the store at Boston were sold to the Regal Shoe Company of Whitman, Massachusetts. This corporation was dissolved in New York on September 29, 1931.

2. Plaintiff's total volume of factory sales of all brands manufactured by it, excluding shoes marked "Emerson" or "The Emerson Shoe" has averaged over three million dollars per year since 1940. The total volume of factory sales of shoes manufactured by it and marked "Emerson" or "The Emerson Shoe" has averaged over $85,000 per year since 1940. These Emerson shoes were resold by distributors "all over New England and the United States". (Plaintiff's answers to Defendants' Interrogatories No. 14 and No. 15.)

uses no distinctive dies or lasts for "The Emerson Shoe" and uses the same dies and lasts interchangeably for the manufacture of other shoes. The plaintiff will stamp on shoes manufactured on order any name requested by the distributor or wholesaler giving the order, and will use the same dies or lasts as are used in the case of "The Emerson Shoe".

The plaintiff's advertising of "The Emerson Shoe", at least on the retail level, has been negligible. With the exception of one advertisement in a Providence, Rhode Island, newspaper in June, 1949,[3] no advertisements of any kind were produced subsequent to the year 1940. There was no radio advertising of any kind. The advertisements which the plaintiff offered at the trial of this case appeared in trade journals directed to the wholesale shoe trade and were published prior to 1940.

The plaintiff attempted to prove through one Frank A. Spector, a Boston wholesale shoe dealer who is the sole distributor of "The Emerson Shoe" in this area, that its "Emerson Shoe" is placed in retail stores in Lynn, Salem, Peabody, Danvers, Brookline, Waltham, Cambridge, and Arlington. I was unimpressed by Mr. Spector's testimony and the plaintiff was unable to produce any evidence, documentary or otherwise to substantiate its allegations. However, for the purposes of this case, I will assume in plaintiff's favor that its distributor did place some "Emerson Shoes" with local retailers for sale to the consuming public since 1938.

Prior to January 10, 1938, a retail shoe store was conducted by one Mark D. Emerson at 169 Harvard Avenue, in Allston, under the name of "Emerson's Shoe Store", together with certain other stores owned by Mr. Emerson. Edward Kerstein[4] of Brookline, Massachusetts, was conducting a hosiery counter in the Allston store. On January 10, 1938, Kerstein purchased from Mark Emerson the assets, stock in trade and good will of the Allston store. Included in the

purchase was the use of the trade name, together with the right on the part of Kerstein to assign, transfer and license unto others the privilege of using the name "Emerson". Kerstein continued to conduct the retail shoe store business in Allston under the same trade name as before. The business prospered and in 1940 a second store was opened at 470 Massachusetts Avenue, Arlington, Massachusetts. In 1944 a store was opened in Newtonville, Massachusetts, but this store was subsequently closed. In 1945 a retail shoe store was opened at 305–A Harvard Street, Brookline, Massachusetts, and at or about the same time Kerstein caused to be organized the defendant Emerson's Shoes, Inc. Finally, in 1946, a retail shoe store was opened at 246 Moody Street, Waltham, Massachusetts. All of these stores are conducted under a uniform policy. Kerstein licensed each of the stores to use the trade name of "Emerson's Shoes" and, accordingly, all are conducted under the trade name of "Emerson's Shoes" and business certificates to that effect were duly filed.

The defendant's stores carry only nationally advertised branded shoes. They do not carry "The Emerson Shoe". In the field om men's shoes they carry, among others, "Bostonian" and "Roblee"; in women's shoes, "Vitality" and "Enna Jettick"; in boys' shoes, "Boy Scout"; in children's shoes, the "Stride-Rite".[5] These are all nationally advertised brands, well known to the average consumer of retail shoes. The defendants, in their advertising and in their display-windows, feature these nationally advertised brands.

On the outside of each of the defendants' stores is a large sign, "Emerson's Shoes". In the case of two of the signs, the names of some of the trade-marked brands carried in the store appear in smaller letters on the sign. On the windows of each of the stores appears the name of the store as on the sign. The name also appears on price tags, wrapping paper, and stationery used by

3. The complaint in this action was filed on December 30, 1947.

4. See Silbert v. Kerstein, 318 Mass. 476,

5. Approximately fifty per cent of the defendants' sales are of children's shoes.

the defendants. In the windows of the defendants' stores there is a display of men's, women's and children's shoes. On some of the footwear displayed there are price tags bearing the word "Emerson's". On other shoes there are price tags bearing the brand name of the shoe, e. g., "Stride-Rite", "Roblee". Whenever the price tag bears only the word "Emerson's", the shoe bearing such a tag is to be found in the vicinity of a card or other form of advertisement bearing the name of a nationally advertised brand. In some instances a pair of shoes is marked with both the "Emerson's" price tag and a tag bearing the name of the national branch such as "Bostonian Jr." Many of the shoes are turned so that the brand name is visible. On no shoe is the name "Emerson's" stamped or marked.

In the interior of these stores there are signs which in each instance indicate some of the brands carried, e. g., "Enna Jetticks, America's Smartest Walking Shoes", "Roblee, Shoes for Men", "Vitality Shoes for Women". The stock is kept fully visible. The shoes are kept in their original shoe box and placed in tiers, one upon another. The boxes are so placed that the names of the shoes contained therein are clearly visible to the customer. In every instance the names displayed are those of nationally advertised branded shoes. No carton or shoe box is stamped or marked "Emerson's".

The defendants' stores specialize in the sale of children's shoes and a large part of their gross business consists of the sale of shoes to children.

The defendants advertise in the various local newspapers circulated in the areas where the stores are located. The total dollar volume of advertising has been approximately $3,500 per year. The four outside signs placed on each of the stores involved an expenditure of approximately $5,000.

The defendants conduct a local retail business, that is to say, their customers are largely within a 25 mile limit and there are no charge-account customers located outside of Massachusetts. No sales have been made outside the Commonwealth of Massachusetts; on perhaps half a dozen occasions, after a sale of children's shoes, the defendants' store would, as a matter of convenience to the customer, ship the shoes purchased to a boys' or girls' camp located outside the Commonwealth.

Until the fall of 1947 no complaint was made by the plaintiff to the defendants with respect to the latters' use of the word "Emerson's" in their trade name, although the witness Spector testified that he had known for ten years defendants were in the shoe business and "might have told" the plaintiff's sales manager. In October, 1947, the plaintiff called upon them to cease the use of that word and, upon refusal, brought this action.

The first issue involved is whether the plaintiff has shown a right to relief under the trade-mark statutes of the United States, Trade-Mark Act of 1946, Lanham Act, § 1 et seq., 15 U.S.C.A. § 1051 et seq., which repealed the Trade-Mark Act of 1905, 33 Stat. 724, 15 U.S.C.A. § 81 et seq.

Section 32 of the Act reads, in part: "(1) Any person who shall, in commerce, (a) use, without the consent of the registrant, any reproduction, counterfeit, copy, or colorable imitation of any registered mark in connection with the sale, offering for sale, or advertising of any goods or services on or in connection with which such use is likely to cause confusion or mistake or to deceive purchasers as to the source of origin of such goods or services; or (b) reproduce, counterfeit, copy, or colorably imitate any such mark and apply such reproduction, counterfeit, copy, or colorable imitation to labels, signs, prints, packages, wrappers, receptacles, or advertisements intended to be used upon or in connection with the sale in commerce of such goods or services, shall be liable to a civil action by the registrant for any or all of the remedies hereinafter provided * * *."

Section 45 provides that:

"In the construction of this Act, unless the contrary is plainly apparent from the context—* * *

"The word 'commerce' means all commerce which may lawfully be regulated by Congress. * * *

"For the purposes of this Act a mark shall be deemed to be used in commerce (a) on goods when it is placed in any manner on the goods or their containers or the displays associated therewith or on the tags or labels affixed thereto and the goods are sold or transported in commerce. * * *

"The intent of this Act is to regulate commerce within the control of Congress by making actionable the deceptive and misleading use of marks in such commerce; to protect registered marks used in such commerce from interference by state, or territorial legislation."

Under Article 1, § 8, Cl. 3 of the Constitution of the United States, Congress has the power to regulate commerce among the several states, which embraces power to act in respect of matters in intrastate commerce if those matters substantially affect interstate commerce.

Did the acts of the defendants which are here complained of take place in commerce which may lawfully be regulated by Congress? Plaintiff had the burden of showing the affirmative of this proposition and I find that it has not sustained that burden. It did not plead that the alleged infringing trade-name was used in interstate commerce or in intrastate commerce which substantially affected interstate commerce; nor did it prove it. The evidence, on the other hand, established that the defendants operated local retail stores, that their sales were intrastate exclusively and were sales of "goods acquired and held by a local merchant for local disposition". Walling v. Jacksonville Paper Co., 317 U.S. 564, 570, 63 S.Ct. 332, 336, 87 L.Ed. 460. The goods which defendants sold locally came from out of the Commonwealth, it may be conceded, but they had come to rest within Massachusetts and interstate commerce had ceased. Schechter Poultry Corp. v. United States, 295 U.S. 495, 55 S.Ct. 837, 79 L.Ed. 1570, 97 A.L.R. 947; Higgins v. Carr Bros. Co., 317 U.S. 572, 63 S.Ct. 337, 87 L.Ed. 468. The most that the plaintiff has shown is that the defendants' stores, on a half-dozen occasions, shipped children's shoes out of

state as a matter of convenience to a customer after a sale had been consummated. Such transactions had, at most, an incidental, indirect and remote effect upon interstate commerce. Such casual, trifling, occasional, irregular, sporadic and isolated shipments in interstate commerce, when compared with the total volume of defendants' business, and made not as a regular course of their business, should not be found to affect substantially interstate commerce. See Folmer Graflex Corporation v. Graphic Photo Service, D. C., 44 F.Supp. 429, 433; and, compare, under the Fair Labor Standards Act of 1938, 29 U.S.C.A. § 201 et seq., Goldberg v. Worman, D.C., 37 F.Supp. 778, 779; Hooks v. Nashville Breeko Block & Tile Co., D.C., 39 F.Supp. 369, 370; Hill v. Jones, D.C., 59 F.Supp. 569, 572; Urban v Victory Naval Uniform Co., D.C., 71 F. Supp. 270.

I am unable, therefore, to find that the alleged infringing trade-name was employed in interstate commerce to any such extent as would entitle the plaintiff to relief under the trade-mark statutes. Since the defendants' use of the trade-name was not "in commerce", the plaintiff is not entitled to relief on that ground under the Lanham Act, C. B. Shane Corporation v. Peter Pan Style Shop, Inc., D.C., 84 F.Supp. 86; Samson Crane Co. v. Union Nat. Sales, D.C., 87 F.Supp. 218, or under the Trade Mark Act of 1905, U. S. Printing & Lithograph Co. v. Griggs, Cooper & Co., 279 U.S. 156, 158, 49 S.Ct. 267, 73 L.Ed. 650; Horlick's Malted Milk Corp. v. Horluck's, Inc., 9 Cir., 59 F.2d 13, 14; Edgar P. Lewis & Sons v. Mars, Inc., 1 Cir., 62 F.2d 406, certiorari denied 288 U.S. 611, 53 S.Ct. 405, 77 L.Ed. 985; Fred Benioff Co. v. Benioff, et al., D.C., 55 F.Supp. 393.

The question now remains whether the defendants were guilty of unfair competition in the use of the trade-name "Emerson's Shoes". This court has jurisdiction of this cause of action, which was well pleaded, the requisite diversity of citizenship and amount in controversy being present. The defense to the allegations of unfair competition is lack of secondary meaning and lack of confusion among the

purchasing public. The Massachusetts rules of law are to be followed. National Fruit Product Co. v. Dwinell-Wright Co., D.C., 47 F.Supp. 499, 504.

By-passing the issue of secondary meaning, I have been unable to find any credible evidence of confusion or facts from which it could be inferred that the public has been misled in any way by the defendants in the use of the phrase "Emerson's Shoes". The defendants did not adopt an arbitrary trade-name but rather a name already established by Mark D. Emerson and are entitled to the same rights and privileges which Mark D. Emerson enjoyed. The mere use of a name which the defendants had a right to use does not in and of itself constitute unfair competition. Russia Cement Co. v. LePage, 147 Mass. 206, 208, 209, 17 N.E. 304, 9 Am. St.Rep. 685; Burns v. William J. Burns International Detective Agency, 235 Mass. 553, 127 N.E. 334; California Fruit Growers Exchange v. Sunkist Baking Co., 7 Cir., 166 F.2d 971, 976.

Wherever the natural and probable consequences of the use of his name by a newcomer have caused confusion to the public in differentiating his goods or place of business from the goods or location of an old established competitor using a similar name, the newcomer has been required to take such steps as may be necessary to eliminate such confusion. Cain's Lobster House, Inc., v. Cain, 312 Mass. 512, 45 N.E.2d 397, and cases cited therein.

But in the instant case the defendants have shown that they have so conducted their business in all respects that there has been and should be no confusion occasioned by the use of their trade-name. The advertising displays and the arrangement of the goods in the stores are calculated to impress upon the shopper of average intelligence that the only shoes sold by the defendants were nationally advertised branded products. The defendants did not deliberately "palm off" their shoes as the shoes of the plaintiff. No fraud was practiced on the purchasing public. (No witness representing the latter was presented.) The case would be stronger for

the plaintiff if its product, "The Emerson Shoe", were widely known in the area in which the defendants' stores operated. But there is no evidence that any section of the purchasing public identifies the trade name of the plaintiff's shoes or that anyone buys "The Emerson Shoe" because it is "The Emerson Shoe". Plaintiff did not advertise "The Emerson Shoe" on the retail level and, since 1940, did not advertise on any level. It did nothing to build up the reputation of this particular product, which, after all, did not differ from other shoes which were marked with other names, the dies and lasts being the same. The name in itself is not so fanciful or distinctive as to become impressed upon the mind of the average shopper. "Emerson" has become a rather common mark. See Emerson Electric Manufacturing Co. v. Emerson Radio & Phonograph Corp., et al., D.C., 24 F.Supp. 481. I cannot find that the name "The Emerson Shoe" has acquired a secondary meaning to the purchasing public as designating shoes manufactured by the plaintiff and its predecessors. If its products once had a secondary meaning, I find that that meaning has not persisted so as to enable plaintiff to seek equitable relief at this time. The burden is upon the plaintiff to establish secondary meaning and confusion by a preponderance of the credible evidence. I find that it has not fulfilled that burden.

The word "Emerson" having acquired no secondary meaning as designating the plaintiff's product, its rights are not enlarged by Mass.G.L.(Ter.Ed.) c. 110, § 7A, inserted by St.1947, c. 307, if that statute is retrospective. (See Food Fair Stores, Inc., v. Food Fair, Inc., D.C., 83 F.Supp. 445, 451–452) Mann v. Parkway Motor Sales, Inc., 324 Mass. 151, 85 N.E.2d 210.

As was said in Brooks Bros. v. Brooks Clothing of California, D.C., 60 F.Supp. 442, 448, in the last analysis what a court tries to do, in each case of unfair competition, is to determine whether the particular action of a person was what was the decent thing to do in trade. Here I find that all efforts to mislead the public have been avoided by the defendants; the public has not been deceived and in all reasonable

probability will not be deceived by the use of the defendants' trade-name. Any success which the defendants have derived from their business has been the result of hard work, competent service and their own valuable good will, and not the result of any trading upon the plaintiff's good will and reputation. I conclude that the plaintiff is not entitled to an injunction.

Judgment will be entered for the defendants, with costs.