**LIBBY, McNEILL & LIBBY v.**
**LIBBY et al.**
Civ. A. No. 51–735.

United States District Court
D. Massachusetts.
Feb. 11, 1952.

Arthur D. Thomson and Thomson & Thomson, all of Boston, Mass., Beverly W. Pattishall, Lewis S. Garner, and William T. Woodson of Rogers & Woodson, all of Chicago, Ill., for plaintiff.

W. Arthur Garrity, Jr. (of Maguire, Roche & Garrity), Frank D. McCarthy, all of Boston, Mass., for defendants.

SWEENEY, Chief Judge.

In this action the plaintiff seeks to enjoin, and recover damages for, an alleged infringement of its trade-mark and for unfair competition.

### Findings of Fact.

In 1947 when the defendant Andrew Libby became a naturalized citizen he adopted the name of Andrew G. Libby. Up to 1951 he ran a diner lunch service in Roslindale, Massachusetts, and early in January of 1951, having disposed of his diner he and his wife, Mary, opened a super market in West Dennis, Massachusetts, under the name of "Libby's Super Market".

The plaintiff is a well-known meat packer and since 1894 has continuously used the name "Libby's" as a trade-mark and has registered it in both the United States Patent Office and in the Commonwealth of Massachusetts. The name has acquired a secondary meaning as indicating the plaintiff's products, which the defendants do not deny. Jurisdiction of this Court is invoked under the trade-mark laws of the United States, 15 U.S.C.A. §§ 1051 through 1127, and also on the ground of diversity of citizenship, there being an allegation that there is more than $3,000 involved. In spite of the claim made for damages in the Complaint, the plaintiff in open court waived that claim and now seeks merely an injunction against the use by the defendants of the word "Libby's" when unattended by some other qualifying word which would serve to eliminate any possible confusion in the minds of the public as to the connection between this market and the plaintiff.

From the facts that were proven at the trial, I cannot find a violation of the Federal trade-mark statute. To entitle one to relief under this statute it must be proven that the acts of the defendants which are complained of took place in interstate commerce or in commerce that can be lawfully regulated by Congress, United States Trade-Mark Act of 1946, Lanham Act Sections 32 and 45. The plaintiff offered no evidence on this point and it did not even plead an interstate use by the defendants. While it is conceded that Congress has the power to act in respect of matters in intrastate commerce if those matters substantially affect interstate commerce, in the present case the goods sold locally by the defendants which originated outside of the state had come to rest in Massachusetts and interstate commerce had ceased. R. P. Hazzard Co. v. Emerson's Shoes, Inc., D.C., 89 F.Supp. 211, 216. The plaintiff's failure to make out a case under this proposition precludes it from any relief under the Federal trade-mark statute for an alleged trade-mark infringement.

With regard to the claim for unfair competition, the defendants have urged that since this Court's jurisdiction is grounded on diversity of citizenship and since the plaintiff in open court has waived any claim for damages, the $3,000 statutory requirement is not met and the court has no jurisdiction. This is not a correct view of the matter. In determining the amount involved it is the value of the thing involved at the time suit was filed and not at some later date which affects the Court's jurisdiction, Lester v. Prudential Ins. Co. of America, D.C., 24 F.Supp. 54, and the value of the thing involved is not the amount that is sought to be recovered but the value of the thing about which the controversy exists. Baker v. Master Printers Union of New Jersey, D.C., 34 F.Supp. 808. See R. P. Hazzard Co. v. Emerson's Shoes, Inc., supra, and Folmer Graflex Corporation v.

Graphic Photo Service, D.C., 44 F.Supp. 429, where despite the fact that the plaintiff waived his claim for damages in a diversity suit for unfair competition, the Court retained jurisdiction of the cause.

Defendants admitted that plaintiff's name Libby had acquired a secondary meaning as indicating plaintiff's products. From the evidence presented at the trial the Court is justified in finding as a fact that the general public might be led to believe that Libby, McNeill & Libby was the owner or operator of defendants' super market or that there was some connection between the two concerns. Such confusion should be eliminated. In Cain's Lobster House, Inc., v. Cain, 312 Mass. 512, 514, 45 N.E.2d 397, 398, the Court said, "If the natural and probable consequences of the use of his name by a newcomer have caused confusion to the public in differentiating his goods or place of business from the goods or location of an old established enterprise doing business under a similar name, then the newcomer has been required to take such steps as may be necessary to eliminate such confusion."

Under the Massachusetts common law on trade-mark infringement and unfair competition there appears to be a requirement that the Court find that the parties are engaged in direct competition before it may grant relief. It might be difficult to satisfy this requirement in the present case, as the plaintiff is primarily a wholesaler, while defendants are retailers. However, in view of Mass.St.1947, c. 307, Mass. G.L.(Ter. Ed.) c. 110, § 7A, the Court is no longer taxed with the necessity of finding direct competition. That statute reads as follows: "Likelihood of injury to business reputation or of dilution of the distinctive quality of a trade name or trade-mark shall be a ground for injunctive relief in cases of trade-mark infringement or unfair competition notwithstanding the absence of competition between the parties or of confusion as to the source of goods or services."

I have found that the use of the word "Libby's" by these defendants tends to confuse the public and probably leads many to believe that this super market is in some way related to the plaintiff corporation. The distinctive quality of the Libby name is thus diluted by these defendants' use of it with their super market. As was stated in Food Fair Stores, Inc., v. Food Fair, Inc., D.C., 83 F.Supp. 445, 451, "* * * it was settled that 'if another uses' the trade name of plaintiff, 'he borrows the owner's *reputation*, whose quality no longer lies within his own control. This is an *injury*, even though the borrower does not tarnish it, or divert any sales by its use; for a reputation, like a face, is the symbol of its possessor and creator, and another can use it only as a mask.'" As these defendants seem to have taken great pride in the selection of the name Libby, I am not going to enjoin them entirely from the use of that name in connection with their super market. Such a power does exist, as is shown in S. M. Spencer Mfg. Co. v. Spencer, 319 Mass. 331, 66 N.E.2d 19, where Mr. Justice Qua stated, "Not only a geographical name, but a family surname as well, may acquire a secondary meaning in a trade and become entitled to such protection as is practically possible and reasonably necessary to prevent deception, even to the extent of an injunction absolutely prohibiting the use of the defendant's own personal name as a part of his business or trade name." The plaintiff has not asked for such a broad injunction and accordingly an order may be drawn enjoining the defendants from using the name Libby in connection with any food product, advertising or other media connected with merchandising food products unless it is qualified by adding his or her first name and middle initial to it.

Conclusions of Law.

From the foregoing I conclude and rule that the defendants are guilty of unfair competition and have infringed the plaintiff's Massachusetts trade-mark.

I conclude and rule that the defendants have violated the provisions of Mass. G.L. (Ter.Ed.) c. 110, § 7A. The plaintiff's prayer for injunction is allowed as limited by the above.