FRANCIS H. LEGGETT & CO.,
Plaintiff,

v.

PREMIER PACKING CO., Inc.,
Defendant.

Civ. A. No. 55–169.

United States District Court
D. Massachusetts.

April 4, 1956.

W. R. Hulbert, Boston, Mass., Wm. W. Rymer, Jr., Rowland V. Patrick, Fish, Richardson & Neave, Boston, Mass., of counsel, for plaintiff.

Joseph Zallen, Arthur Ellison, Boston, Mass., for defendant.

SWEENEY, Chief Judge.

In this action the plaintiff seeks an injunction and damages for an alleged infringement of its trade-mark. The suit is based upon the Lanham Trade-Mark Act, 15 U.S.C.A. §§ 1051–1127, Massachusetts common law, and the Massachusetts statutes, General Laws, Chapter 110 as amended. It contends that its registered trade-mark which had been certified for use in the distribution of meat products under the above statutes and common law is infringed by the defendant's use in interstate commerce and in Massachusetts of a similar and con-

fusing trade-mark on meats. The defendant has filed a counterclaim and admits the jurisdiction of this Court. It denies having knowledge of the plaintiff's registration and alleges invalidity of it, and sets up a defense of laches. It also seeks a decree declaring as between the parties that it is the sole owner of the mark it has been using as applied to processed meats requiring refrigeration as distinguished from meats not requiring refrigeration, both in Massachusetts, and in the United States. The defendant's mark has never been registered under any federal or state statute.

## Findings of Fact

The plaintiff is a New York corporation, incorporated in 1902, as successor to a partnership of the same name, whose principal place of business since its origin has continued to be in New York City. Since 1937 it has maintained a sales office in Massachusetts, and a sales force which has canvassed the state. The name "Premier" was first adopted as a trade-mark in 1880, and has been used by the plaintiff continuously since that time as a distinguishing trade-mark for its extensive line of food products, throughout the United States and in foreign commerce. It sells approximately two thousand food items, including thirty-eight processed meat items, under the "Premier" label. The processed meat items are sold in cans or in glass containers, but none requires refrigeration before opening for use. The plaintiff's records indicate that since 1917 its "Premier" foods' sales have exceeded $930,000,000 and advertising expenditures have approximated $6,500,000. Present advertising expenditures average $250,000 per year. I find that the name "Premier" has acquired a distinctive character in the food industry, with the effect that its continued use by the plaintiff has established good will as well as affirmative consumer reaction to its symbol of origin. This accretion has been established in Massachusetts and through out the nation. It is not diminished by the defendant's citation of various uses of the name by others, when the plaintiff sues for its protection.

"Premier" has been registered by the Leggett Company in numerous instances. The two federal registrations in suit are Registration No. 124,110, dated January 14, 1919 (duly renewed), under the Trade-Mark Act of 1905, embracing a variety of food items including canned meats; and Registration No. 584,040 dated December 29, 1953, under the Lanham Act of 1946, for a variety of items including canned and glassed meats. Among the items described in these registrations are chicken, beef, pork, lamb, frankfurters, and a number of prepared foods having meat as a base. The trade-mark "Premier" was filed in Massachusetts by the plaintiff in 1936, numbered 12845, for sundry food items, including meats. I find that each of these registrations is valid.

The defendant is a Massachusetts corporation, organized in 1946 under the name Premier Beef Co., Inc., succeeding a partnership known as Premier Supply Co., whose partners are principal officers in the corporation. In 1949 the corporation changed to its present name, Premier Packing Co., Inc. In 1949 the defendant began its manufacture of processed meats which now include ham, bologna, liverwurst, salami, minced ham, frankfurters, sausages, and other loaf items. Sales of these items were intrastate, until 1954, when it entered its goods in interstate commerce. The defendant's gross is approximately $2,000,000 per year. Just when the defendant began to use the contested trade-mark is indefinite, for the defendant seemed unable to go beyond an assumption by its president that it was prior to 1954. In any event, its use coincided with its expansion from fresh meats to processed items, accomplished after its adoption of the name Premier Packing Co., Inc., in 1949. Prior use was by the plaintiff.

The plaintiff's trade-mark is the word "Premier" printed in script, having a large separate "P" and smaller separated letters in the remainder. On its labels,

the plaintiff's trade-mark is stated to be registered in the U. S. Patent Office according to 15 U.S.C.A. Chap. 22, § 1111. The defendant's mark consists of a large "P" in script, with the remainder of the letters joined in smaller script. Both are readable at a distance beyond the other printed matter on their various labels. Characteristic to the defendant's labels is the fact that the word "Premier" has beneath it "Packing Co., Inc." in such smaller size as to be termed "in small print". The plaintiff's labels are used on glass containers or cans, while the defendant's appear on transparent or translucent wrappers or casings which take the form of the meats they enclose. Further descriptive details are unnecessary to support my conclusion that the word "Premier" has a similar appearance on the labels of the plaintiff and defendant, and that the defendant used the word as a trade name.

The plaintiff was informed of the defendant's use of the trade name "Premier" in May of 1954. It immediately made efforts to dissuade the defendant from further use. Negotiations to settle the ensuing dispute were unsuccessful, and no evidence is here to indicate the plaintiff's assent to its continued use between this discovery and the commencement of this action on March 4, 1955.

■ The defense of laches is without merit. Under 15 U.S.C.A. § 1072, registration of the plaintiff's mark served constructive notice to the food industry of the plaintiff's claim of ownership. The president of the defendant corporation admitted to the lack of any inquiry concerning the propriety of using the word "Premier" as a trade name either before or since the defendant's employment of "Premier" as a trade name. Registration No. 124,110 was registered in 1919, and its effect as constructive notice was established by the Act of 1946. Registration No. 584,040 registered in 1953 under the above Act was further notice of the plaintiff's claim. Both existed prior to the defendant's entry into interstate commerce. The de-fendant cannot argue laches for its own lack of diligence, without establishing the owner's acquiescence in its intrusion so as to condone continued intrusion. See the opinion in Lambert Pharmacal Co. v. Bolton Chemical Corp., D.C., 219 F. 325, at page 326.

Concerning the characteristic of the word "Premier," I find and rule that its use by the plaintiff was not, in the main, in the adjectival or comparative sense, but rather as a symbol of substance. See Raymond v. Royal Baking-Powder Co., 7 Cir., 85 F. 231, and, Worcester Brewing Corp. v. Rueter & Co., 1 Cir., 157 F. 217.

■ It is unquestionable that in the commerce of processed foods, the name "Premier" has developed as a distinctive brand name. This repute has been extended to the area of processed meats. The defendant's argument that its own use of the mark on "refrigerated" meats will not incline the consumer to confusion of origin is not persuasive. It rests on two false assumptions, viz.: that refrigerated meats do not compete with canned or glassed meats, and that it would not be within the consumer's expectation that the plaintiff would distribute refrigerated meats. I find and rule that in this instance the defendant's goods do compete with the plaintiff's, and that the consumer would be likely to consider that the defendant's products have their origin in the plaintiff's enterprise.

■ However, identity of products is not essential to an action for infringement. American Products Co. v. American Products Co., D.C., 42 F.2d 488; Pure Foods, Inc., v. Minute Maid Corp., 5 Cir., 214 F.2d 792. Nor is it necessary that fraud discolor the conduct of the imitator, Rest. Torts Vol. III, Ch. 35, § 717.

The distinction between "refrigerated" meats and "non-refrigerated" meats fails as a defense. It would be unfair to limit the plaintiff's trade-mark rights to meat or food items for storage at room temperature simply because the de-

velopment of its trade-mark paralleled that of refrigeration rather than followed it. This would be the adverse effect of submitting to the defendant's argument. In its broad scope, it is rather the tendency of the law to enforce "increasingly higher standards of fairness or commercial morality in trade." Rest. Torts, Vol. III, Ch. 35, p. 540. Section 717 Rest. Torts sets out an accurate standard of the conditions of infringement and the facts here fit those conditions with amplitude. See also Comment on Clause (b), § 731, Ch. 35.

The cases cited by the defendant do not persuade me to different conclusions, and the cases cited from this jurisdiction accord with the above conclusions. See Dwinell-Wright Co. v. National Fruit Product Co., 1 Cir., 140 F.2d 618; Mishawaka Rubber & Woolen Mfg. Co. v. Panther-Panco Rub. Co., 1 Cir., 153 F.2d 662; Folmer Graflex Corp. v. Graphic Photo Service, D.C., 44 F.Supp. 429; Libby, McNeill & Libby v. Libby, D.C., 103 F.Supp. 968.

▮ On the basis of my finding that there exists a likelihood of dilution of the distinctive symbolism of the plaintiff's mark, Mass.General Laws, Chapter 110, § 7A, St.1947, c. 307, authorizes the issuance of an injunction against the defendant to ensure its cessation within the Commonwealth. See Healer v. Bloomberg Bros., 321 Mass. 476, 73 N.E.2d 895.

▮ On the added bases of my findings that the defendant's conduct tends to confuse the consumer concerning the origin of goods sold under the "Premier" label, the Lanham Act, supra, authorizes injunctive relief in inter-state commerce. Accordingly, an order may be drawn enjoining the defendant from any further use of the word "Premier" to designate its products, to have effect throughout the extent of intrastate or inter-state commerce, within the provisions of 15 U.S.C.A. §§ 1116 and 1118.

The defendant's counterclaim is dismissed.

▮ Under 15 U.S.C.A. § 1114(1)(a), the plaintiff is entitled to damages. An accurate assessment of damages must be accomplished by an accounting under § 1117 to include reasonable attorneys' fees, and the expenses and costs of this litigation. This accounting shall be restricted to the defendant's operations subsequent to June 1, 1954, which was a reasonable time after notification of infringement by the plaintiff for investigation and corrective action to have been taken. Damages in this case do not predate the receipt of actual notice by the defendant, because it has not been established that in its initial use of the mark the defendant intended to palm off its goods as the plaintiff's. However, after notification and the opportunity to inquire and confirm the plaintiff's claims, the defendant persisted in the affront, and maintained its sales under the offending label. See Wallace & Co. v. Repetti, 2 Cir., 266 F. 307, certiorari denied 254 U.S. 639, 41 S.Ct. 13, 65 L.Ed. 451; Mishawaka Rubber & Woolen Mfg. Co. v. S. S. Kresge Co., 316 U.S. 203, 62 S.Ct. 1022, 86 L.Ed. 1381; Scovill Mfg. Co. v. United States Electric Mfg. Corp., D.C., 47 F.Supp. 619; Regis v. H. A. Jaynes & Co., 191 Mass. 245, 77 N.E. 774; Treasure Imports v. Henry Amdur & Sons., 2 Cir., 127 F.2d 3. The facts do not warrant an order for increased damages. Attorneys' fees are to be included in this order, due to the defendant's refusal to terminate its trespass on the plaintiff's property after notice had been duly posted by the plaintiff.

### Conclusions of Law

From the foregoing, I conclude and rule that the use of the word "Premier" by the defendant is violative of the Lanham Trade-Mark Act.

I also conclude and rule that the use of the word "Premier" is violative of the Massachusetts General Laws, Chapter 110, Section 7A.

I conclude and rule that an injunction may issue against the further use of the

word "Premier" by the defendant either in intrastate or interstate commerce.

Judgment is to be entered for the plaintiff and the case will be referred to a Master on the question of damages. A decree may be prepared in accordance with the above, leaving the identity of the Master in blank, as well as the question of reasonable attorneys' fees.

The defendant's counterclaim is dismissed.